JAMES COLLES, Jr., Appellant, *v.* THE TROW CITY DIRECTORY COMPANY and others, Respondent.

*Corporation — what acts void as ultra vires — using its funds to destroy competition.*

The defendant corporation was organized for the purpose of printing and selling books, principally a New York directory. In 1875 one Goulding published a city directory, and sold it for a less price than defendant; the defendant's trustees alleged that he was able to undersell them, and that an unfair competition was created because he did not intend to pay for printing it. To prevent its future publication, defendant entered into an agreement with Goulding's printer, by which it purchased of the latter one-half of Goulding's over-due notes for $3,000, and paid to the printer $1,000 in addition, in consideration of which the printer agreed to publish no more directories for Goulding, and to sue upon and get into judgment the indebtedness due from him, in order to ruin his credit. *Held,* that the agreement was *ultra vires* and void, and that plaintiff, a trustee and stockholder of the defendant, was entitled to an injunction to restrain his co-trustees from using the funds of the corporation to carry it into effect.

Appeal. from an order of the Special Term denying plaintiff's motion for an injunction to prevent his co-trustees from using the funds of the defendant, The Trow City Directory Company, for the purpose of buying up claims against and destroying the credit of a rival publisher of a New York city directory.

*George W. Van Slyck,* for the appellant.

*John E. Parsons,* for the respondent.

Davis, P. J.:

The Trow City Directory Company is a corporation organized under the laws of this State; its business, as declared by its charter, is the compiling, manufacturing, printing and publishing of books and selling the same; and its principal business has been the publication and sale of a directory of the city of New York. The plaintiff is a stockholder and one of the trustees of said corporation, and the defendants, Beach and Trow, are the other trustees; and one of them is president, and the other secretary and treasurer of the company

In the year 1875, one Goulding published another directory of the city which was inferior to that of defendants, and was sold at a less price. It is alleged, in substance, by defendants, that Goulding was able to undersell them and create an unfair competition, because he did not pay for the printing of his books.

In order to prevent the further publication of Goulding's Directory and stop his competition, the defendant trustees, who are a majority of the board, passed a resolution authorizing the trustees to enter into an agreement with the printers of Goulding's Directory (to whom Goulding was indebted in the sum of $7,000 of dishonored notes), to the effect that the corporation should buy $3,000 of such indebtedness and pay that sum therefor, and $1,000 in addition, and that such printer should refuse to print any more directories for Goulding, and should sue him upon the whole of said $7,000 indebtedness and get judgment as speedily as possible, and thereby, in substance, prevent Goulding, by destroying his credit, from publishing and selling directories in competition with defendants. The plaintiff, as one of the trustees, voted and protested against the resolution and the proposed action of the board, and he commenced this suit to prevent his co-trustees from using the funds of the corporation to carry out the contemplated arrangement.

As Goulding's notes were supposed to be of no value, the substance of the arrangement is, that defendants should pay his printer $4,000, as a bonus, to prevent the future printing of Goulding's Directory by them, and for taking such steps as would probably prevent any other printer from doing the work for Goulding.

It is not necessary to discuss the moral aspects of this arrangement or the question of public policy involved in allowing a corporation to rid itself of competition by such means. It is enough to inquire whether the corporation has any right to use its funds for such a purpose. We think the scheme was altogether *ultra vires.* The corporation was not created for the purpose of destroying competition and establishing a monopoly, in any way other than such as might be incidental to the superiority of its manufactures and their cheapness and excellence. That way was legitimately open to them at all times. But to pervert the funds of the corporation to the purchase of the worthless notes of a competitor, for the purpose of embarrassing his business, and injuring his credit by a law suit, and

to the payment of a bonus to induce his printers to refuse to do his printing, is something altogether outside of the legitimate corporate business. It was no part of the corporate business to buy bad debts and dishonored notes, and still less to pay premiums to prevent the creditors of competitors from giving further credit, or doing work which they might otherwise be willing to undertake.

It is no answer to say that Goulding's competition was unfair; that he was selling what he did not pay for, and therefore could injure defendant's business by underselling. " To fight the devil with fire " is sometimes said to be fair in theology and politics ; but corporations are not created for such purposes, and their trustees have no power to use their funds for objects of that nature. The trustees who do so become personally liable for a misuse of the corporate funds.

The order, in so far as it denies the motion, should be reversed and the motion granted, with ten dollars costs of this appeal besides disbursements.

Brady and Daniels, JJ., concurred.

Order reversed, motion granted, with ten dollars costs of appeal besides disbursements.